Our next case for argument is Mock v. Allstate Insurance. Appellant. Thank you, Your Honor. May it please the Court, I am Dennis Polk. Also appearing with me is Ryan Stevens. We appear on behalf of Mr. and Mrs. Mock, who are the appellants. Today we are talking about a subject equally robust as the prior cases dealing with regulations. This is an insurance coverage case. And in the court below, the magistrate judge in our view erred in a number of ways, but I'd like to focus on three particular issues in my discussion with you today. The first issue has to do with the lower court's interpretation of the terms in the policy that in our view had previously been reviewed by the Colorado Supreme Court in the Heckler decision. That has to do with this definition of sudden, and whether that is a temporal definition or whether that is an event-based definition. The gravamen of the trial court's order is that the Mock's home had suffered long, continuous, and progressive damage as a result of what has contended to be original construction defect and error. However, it is significant to note that in this instance their home was built in 1994, was continuously insured by Allstate from 1994 until these events of this sudden event in May of 2015. Without this sort of incident... Well, what was the sudden event? The hail, hail stones hitting the roof? Hail and other precipitation. This was a... Hail and rain hitting the roof? Hitting the roof, hitting the sides of the structure, penetrating in through and under the structure, causing damage. You have to contrast that with the... Yes, but bear with me on these questions, please. So had there been water penetrating the EIFS structure before that? What was the date of the hail storm? If you bear with me, I'll tell you. The hail storm was May 25 of 2015. May 25 of 15. Had there been moisture penetration of the EIFS structure prior to that date? In the record in the court below, the moisture notation with regard to the external structure, superstructure of the building, was some months later when a contractor was examining... Well, that's when they found it. They found it when it was first...  It had been going on forever, just like it always does, right? Well, at some level, a water protection system is inherently designed to cause water to flow in through. It's inherently faulty. It is inherently faulty. All right. There is, in every structure, perhaps including this structure, there is some level of water that appears. However, if you are faced with a catastrophic level of water that then makes the physical aspects of the building unusable, unsuitable, or improper, that is what is the triggering event, and that's why you carry these type of multi-perils policies. For example, if the carrier had sought to exclude those type of events, they have excluded water events in at least four express exclusions in their policy. Well, weren't there exceptions for construction, design, et cetera, et cetera, materials, et cetera, et cetera? In rough terms, that's what it says. Right. But here... And were these issues presented to a jury? These issues were determined by the magistrate judge who was sitting on summary judgment. All right. The various expert reports were there and before the court. So it comes down to that court interpreting what that phrase means. I submit that the Colorado Supreme Court, which, because this is a case in diversity, the lower court should have at least followed the, I don't want to say mandate, but suggestions, as it were. There's two issues. One is suddenness and one is causation, right? That's right. And I think those are inherently factual in nature and it was error to have determined them on the basis of summary judgment. This case was never presented to a jury and those are factual issues. Following up with your notion about the inherent nature of water and water intrusion, if you were talking about one of these set of facts, you know, the IFAS system, the stucco is another way of looking at it, that's one level. But here you're talking about water penetration that was under, below, and beyond that. There was interior manifestation that was first observed during this policy period, which is different or at least was a fact question that the magistrate judge below failed to consider. And so, therefore, this really comes down to that issue. However, instructive should be rather we look at the definition that the magistrate judge adopted because, interestingly enough, in the same source where she said we resort to common usage, in the same dictionary she ignored the first definition for these exact events, which are more akin to what the Colorado Supreme Court did in Heckler. Admittedly, Heckler is that slightly different form of policy, but the words the Colorado Supreme Court looked at, the word occurrence, and the sudden things have been defined by the Colorado Supreme Court. Did Heckler address sudden and accidental? Yes. That phrase together? It did. Which is exactly the phrase we have here. It is exactly the same phrase. Now, it is in the context of a slightly different policy because that policy had both third-party issues and first-party issues. So in finding that phrase ambiguous in Heckler, was that conclusion reached because of its location in the policy, that is, if it was in an exception or exclusion? I don't think Heckler specifically does that. I think the distinction with Heckler is the use of the phrase occurrence. Occurrence is a defined term in the all-state policy here. However, it appears, and respectfully, you have to look at these, because our Colorado Supreme Court has suggested, because these are policies and contracts in the nature of an adhesion contract, it's a take-it-or-leave-it, you don't have any negotiating power, that if you find ambiguity, you have to look at it, in effect, in the eyes of the common man or the ordinary person. And if we contrast the language that's found in the policy and the definition of occurrence with the sudden and accidental, I think those three things create an ambiguity in the policy that precluded the granting of summary judgment on that particular issue. Well, in Heckler, they looked, again, at sudden and accidental, that phrase. They did. And the Supreme Court of Colorado said that's ambiguous. They said that phrase is ambiguous. I'm with the tenor of Judge Briscoe's first question, and that is I thought the court had interpreted the word sudden, but not sudden and accidental in tandem. Well, I may have read Heckler a hundred times, and Heckler, I think, stands for the general proposition because that phrase is used in tandem in the underlying policy. I think they can't be read separately. I also think you have to look at the term occurrence. Thanks. We'll have to look at that. And so you look at those things. I think that it creates a situation where the presentation of the information at the trial court level was sufficient to overcome a summary judgment because you have to use the definition. Respectfully, the magistrate judge did not include even the full dictionary definition upon which she relied, which reached a non-temporal. Can we go to this alternative issue that you identified and that we were discussing, and that is the exclusion for faulty design or construction? Sure. There is an exclusion for that. There is an exclusion that if the damages, and, again, we have to look at this in a temporal sense. If the damages themselves were caused by that insufficient design, original construction, but you have to look at this. This was insured by the same carrier. So what? If the thing was bad to begin with, they didn't insure bad construction. You're trying to rewrite the whole policy. However, well, respectfully, I don't think we're trying to rewrite the whole policy. I think we're trying to apply a circumstance where that structure existed without physical manifestation of damage for a period from 1994 until 2015. So you would say if there were termites in there and it took them 10 years to eat through, that that would be covered? Well, in some policies it would, in some policies it wouldn't. But putting aside that hypothetical, what we know here is at least from the plaintiff's experts, they said the system had been maintained properly. The sealants had been maintained properly. And here this leak occurred, notwithstanding that proper maintenance. So if we get into construction and maintenance, we're into a fact question? That's your point? The point is that it is a fact. Because there were varying opinions on maintenance and construction. It is a fact question. You also have to look at whatever basis it was at the time this insurance carrier denied the claim. Well, one quick second. There is a fact question. As I understand the facts, undisputed facts, is that the experts had found extensive rotting of the material, of the EIFS system and extended to the framing. What I would suggest, there were locations in which the EIFS system itself was not rotting. It was soft in locations. What is the material dispute of the evidence as to whether that extensive rotting and damage that was discovered on that day occurred as a result of the hails and rain of May 2015? Let's look at the scope and nature of the policy. It may well be that not all damages were covered. It may well be that certain aspects were not damaged until this flood. You have the wall cavities. It may and it may not. What evidence is there that it was? The expert report, the testimony of Mr. and Mrs. Mock, for example, the interior drywall, interior sheathing had never been wet before. Those things had never happened. So you're looking at that. So it becomes a fact question for the ultimate finder of fact. I thought that both experts agreed the defect in the stucco dated back to 1994. Both experts agreed that there were issues and construction errors dating to 1994 with regard to the EIFS application. There are other water intrusion circumstances that existed here other than separate and apart from the EIFS. There you're talking about flashing. This is a water control system. There are other damages. It was the trial court assuming that all damages were related to that. That becomes a shifted burden to the insurance company. If there's some damages there, they have an obligation to look and deal with those damages. If a ultimate fact finder and a contestant said, I can't prove that case, then so be it. But there was sufficient evidence to create a fact issue as to how much was related to that exclusion. I want to briefly touch, and I'll try to reserve the balance of my time for rebuttal, on a couple of other issues. It took more than ten months for this insurance company to acknowledge the roof-based claim. Under Colorado's unreasonable delay and denial, that's an unreasonable time or it was a fact question that the trial court didn't consider. The trial court simply reached the conclusion opinion, because there was no coverage based upon this other exclusion, that they weren't going to address that issue. And then there is this continuing fight that was a fact question about whether or not this policy required the carrier to pay for overhead and profit of a general contract. The policy doesn't expressly exclude it. They simply said it was their procedure and policy not to pay it. And that was just wrong. If I may reserve the balance of my time to reply. You may. Thank you. Good morning. Good morning, Your Honors. May it please the courts, I'm Robert Hunger and I represent the appellee in this matter. I believe it was briefly touched on earlier today, but there is an issue that irrespective of whether there is coverage in the first instance, is dispositive of this matter. And that is the exclusion that provides no coverage if the predominant cause of the loss was a faulty IFAS. A faulty what? A faulty IFAS, the E-I-F-S. There's an express exclusion for that, you say? Yes, Your Honor. What's the clause? Where is it? What does it say? Exclusion 22 precludes coverage for losses caused by faulty, inadequate, or defective design specifications, materials, or maintenance. Oh, so it's not specific. It's materials that you're sticking IFAS under the word materials. Well, and design, Your Honor. I believe that the design of IFAS has been. I understand. I just heard you making the argument. It's E-I-F-S specifically. And you perked my interest. Of course, Your Honor. Of course, Your Honor. But if you go down that road, isn't it a fact case then? Your Honor, I don't believe it is because we have expert reports from both. Well, they have experts, too. Everybody's got an expert. Both experts agree in this case that the damage was caused by a defective IFAS. RIMCAS, which was Allstate's expert, concluded that the damage was caused by an improper design. And SBSA, the appellant's expert, agreed with RIMCAS on that front and provided, quote, the water intrusion and resultant damage is the result of an inherent flaw in barrier IFAS systems, quote. Appellant's expert did opine that the house was built to code in 1994 and that there was no architectural defect. But in the face of SBSA's agreement that the damage was caused by an inherent flaw in IFAS, I believe that there's not a question of fact as far as the experts are concerned. Well, let's go to this issue of overhead and profits because that's facially unreasonable, isn't it? Yes, Your Honor. Have you ever hired a contractor to work on your house? Do you have a house? I do not own a house. Do you live in an apartment? Here we go. I am but one of many tenants in our great city. That's unreasonable, right? Your Honor, I believe that the original rationale for the overhead The original rationale, all Americans have to hire a contractor from time to time. And I'd like to hear a contractor ever say to any American, oh, no, I'm going to just throw in my overhead and profits. We're just good guys. Yes, Your Honor. It doesn't happen that way. Yes, Your Honor. At the outset, there is I'm not going to stop until I hear you say yes, Judge, I agree. There's an unsettled question of law in Colorado as to whether overhead and profit is available to a party if they do not What case? Give me the case that says that. I don't believe I have the case on the top of my head. What judge wrote that opinion? But more to the point, Your Honor, under the facts of this case No, I'm serious. What's the case? Your Honor, it's not in the briefs. If you would like a supplement, I'd be happy to It's unsettling, but I sure would like to know. There is an ongoing issue of fraud in the overhead and profit issue, Your Honor, in which we have testimony that the You don't want to get it in front of me, I guess, right? Demo to self. That the insureds asked the general contractor to lower their overhead and profit and then essentially were not forthcoming and lied about that. But more to the point, on the bad faith issue for overhead and profit, I don't believe that appellant sufficiently preserved that issue for appeal because if you look at their response brief, their response brief is 19 pages long and the entirety of the overhead and profit issue is literally one sentence in their response brief. And so the reason Magistrate Judge Mix did not address this in her grant of summary judgment is because she wasn't properly presented with this issue below. And if appellants believe that this was a significant issue, I would suggest that they would have developed it in an appropriate way below. Now, you just started by telling us initially that we should look at the exclusion and if we look there, that you would prevail. Is that the rationale the district court used in deciding this case? Your Honor, the district court did not ultimately reach the exclusions because it found no coverage existed in the first place. But the issue was fully briefed below. So this is an alternative rationale for affirmance? Is that where you're coming from? Yes, it is, Your Honor. And I believe that because it was fully developed, it's appropriate for discussion and decision because appellate courts are able to affirm on issues raised below. So you would like us to wallow through this exclusion and determine whether or not it applies here, even though the district court has not opined on it? Yes, Your Honor, because both experts agree that the cause of the damage was a defect. Well, I looked at the experts' reports and they agreed about a few things, but not everything. Yes, I believe that on this front, the plaintiffs, the appellant expert asserted that the building was, the residence was constructed according to code as it existed in 1994 and that there was no architectural design defect. But they did not say that there was no design defect in how IFAS was designed. They agreed that there was an inherent flaw in the design of IFAS. So I think that both experts agree that the damage resulted, irrespective of the sudden accidental issue, from a design defect. So the homeowner should sue the manufacturer of the IFAS system? Is that where we're headed here? If they so choose to do that, they would be able to, Your Honor. But what about, could you address the bases that the district court relied on in granting summary judgment to your client? I'd be happy to, Your Honor. The district court ruled on the sudden and accidental language, and I respectfully disagree with counsel that we have the exact same language as we did in HECLA. Here, it's a homeowner's policy, and we are looking at a phrase that provides coverage for sudden and accidental direct physical loss. And I think that context is critical in this issue, because with the phrase sudden and accidental direct physical loss in a homeowner's policy, we are insuring against losses that are direct and that happen in a relatively short window. And so a wide variety of losses are covered here, such as a fire that spreads throughout the house, or a burst pipe that floods the basement, or a hailstorm that would damage the roof or shutters. But as Magistrate Judge Mix recognized in her grant of summary judgment, to provide that damage that gradually occurs over the course of five years, ten years, or up to 20 years, qualifies as sudden and accidental direct physical loss, I believe would really rob the term of all meaning. And counsel cited both- Well, it's the same term, isn't it? Sudden and accidental that we had in HECLA? In HECLA, Your Honor, that was in the context of a CGL policy's pollution exclusion. Correct, but same phrase, sudden and accidental. The term was in HECLA sudden and accidental discharge, but here we're talking about sudden and accidental direct physical loss. And the difference between discharge and loss, I believe, is one of the reasons why HECLA is not applicable to this case. Because HECLA, at the outset, specifically provided that it was interpreting sudden and accidental discharge in the context of a CGL policy's pollution exclusion. And it was very emphatic on that point. And so it did not hold that as a matter of loss, sudden or even sudden and accidental discharge is per se ambiguous. Isn't there another Colorado Supreme Court public service that follows on and says, yes, HECLA is right, that phrase, sudden and accidental, is ambiguous? Yes, Your Honor. And all the subsequent cases to HECLA interpreted that phrase in the context of a commercial comprehensive general liability policy. So public service is the same kind of policy that was addressed in HECLA at that point? Yes, Your Honor, as is the city of Littleton matter, which I believe was decided within a few months of public service. And I think that there are several differences between CGL policies and homeowners policies that show why we should not take the law from HECLA and apply it here. And the first is that the relevant exclusion in HECLA spoke to the insured's conduct. This is the discharge and not the result, which was the resulting pollution. And it's been established in Colorado and beyond that this particular exclusion, this pollution exclusion, is intended to take intentional conduct outside of coverage. And so when HECLA defined this term as sudden and accidental without a temporal element, it served that purpose to preclude coverage for individuals that intentionally let pollutants seep into the soil. And there is no underlying rationale that would have prompted the court to include a temporal element. But in the case of homeowners policies, we aren't focused on an insured's intent. We're focused on the loss. So the same rationale, I believe, from HECLA is absent from the current policy. And then the second issue is that HECLA was a comprehensive general liability policy. Well, but the words, the courts in Colorado have defined it apparently as unexpected and, let me see the word here, unintended. That's what sudden and accidental means under Colorado law. In the context of CGL policies, yes, you're right. So here, the hailstorm was unexpected and certainly unintended. But your argument with respect to the IFAS is this can't be said to be unexpected or anything other than sudden because of the fact that IFAS had been deteriorating for a long time. Is that your argument? Yes, Your Honor, because I believe that going back to the experts, but in the sudden and accidental context, Allstate's expert provided expressly that the penetration to IFAS occurred over the years. How long has it been kind of part of the public, of the common wisdom that IFAS is inherently faulty? I believe sometime in the late 1990s. But when we look at unexpected and unintended, we have to do that from the insured's perspective. And so Rimkus provided that the decay and the rot it noticed in the insured residents would not have happened, but for the damage that had been occurring over the course of years. And the mock's own general contractor also provided that expressly in a deposition that the damage occurred as a result of, that the damage had occurred over a period of years. He said that he grabbed the material and it came apart in his hand and he likened it to a tree that was decomposing on the ground. And that's not something that would happen in a short period of time. The mock's expert here has a very interesting expert opinion, because nowhere in this expert opinion does SPSA, the expert, suggest that this loss did not occur over time and it does not suggest that this loss occurred quickly. There's simply nothing in the record suggesting that the May 25th, 2015 hail event was the cause of the deterioration of IFAS. SPSA even issued a second supplemental expert report and there also did not find that the damage occurred quickly. The mock's main factual argument in that light is that the mock's told SPSA that they regularly maintained the sealants. However, SPSA never says that maintenance of the sealants means that the loss occurred quickly or as a result of one storm. And as I said earlier, Rimkus provided that the staining it observed would not have occurred had it not occurred over a long period of time. And all we have here is SPSA saying that the mock's told me that they maintained the sealants, but this is essentially a threadbare assertion, because we don't know how they maintained the sealants, we don't know when or how. We don't know really any facts to that end. And I don't believe that's sufficient to create a general question of material fact. It's sufficient to withstand summary judgment. And so just very quickly, I know that it was touched on earlier. Council suggested that the word occurrence could conflict with awarding a temporal element to sudden accidental in this case. But here, the word occurrence is found in the liability portion, and it is completely absent from the first party property damage coverage grant. And I don't believe that two terms that can literally never be read together and that can never be applied in the same case can create an ambiguity. And so for those reasons, Your Honor, I would request that this court affirm the district court's grant of summary judgment. Thank you. The Colorado Supreme Court, it isn't merely HECLA, as you correctly pointed out. It's been decided in Public Service v. Wallace. It also has been set forth in the Compass Insurance Company v. City of Littleton case. And using the words of the Supreme Court, where it says, even in its popular usage, sudden does not usually describe the duration of an event, but rather its unexpectedness. A sudden storm, a sudden turn in the road. Those words are not without meaning, and they continue to be used in our jurisprudence. So this is sudden because it only was found and seen after the hailstorm? That's what makes it sudden? It is. It is, in fact, a sudden event. Because you have to remember that the trial court in its order did not reach these exclusions. The trial court simply said and applied that terminology. And that's a fact-based question. And the other thing I'd like to just briefly touch on is the other aspects of the case cry out to have this remanded so we can at least have a hearing based on a full factual record. Thank you.